## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| JULIE A. SMITH | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-02340-CM-KGS |
| | ) |
| KANSAS PUBLIC EMPLOYEES | ) |
| RETIREMENT SYSTEM, | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF AND
### COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS

COME NOW Plaintiff and Counterclaim Defendant Julie A. Smith (hereinafter "Plaintiff"), by and through her undersigned attorney, and for her Reply Memorandum in Support of her Motion to Dismiss Defendant and Counterclaim Plaintiff Kansas Public Employees Retirement System's (hereinafter "KPERS") Counterclaim, and states as follows:

## I.    NATURE OF THE MATTER

This is an action brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), as amended, the Age Discrimination in Employment Act 29 U.S.C. § 621 et seq. ("ADEA"), as amended, and the Family and Medical Leave Act, 29 U.S.C.A. § 2611 et seq. ("FMLA"). KPERS's Counterclaim appears to be based upon a state common-law theory of breach of contract.

## II.    CONCISE STATEMENT OF THE FACTS

Plaintiff was employed by KPERS as a Fixed Income Investment Officer. (Complaint, Doc. 1 at ¶ 11). Prior to her constructive discharge, Plaintiff was threatened with termination, and compelled to sign a document (hereinafter, the "Agreement") purporting to release KPERS

from any past, present, or future liability related to her employment. See (Complaint, Doc. 1 at ¶ 52); (Answer and Counterclaim, Doc. 3, at ¶ 142-143). Based upon this purported release, KPERS has brought a Counterclaim against Plaintiff, failing to identify any cause of action, but seeking "damages in an amount to be determined at trial for costs and attorneys' fees associated with the defense of Counts I, III and V of Plaintiff's Complaint." (Answer and Counterclaim, Doc. 3, at 18-19).

## III.    QUESTIONS PRESENTED

1.     Is KPERS failure to plead the Court's jurisdiction for its Counterclaim permissible because the counterclaim is mandatory?

2.     Does KPERS's Counterclaim fail to state a claim for which relief can be granted because it has failed to plead the elements of breach of contract?

3.     Does KPERS's Counterclaim fail to state a claim for which relief can be granted because release is an affirmative defenses that do not give rise to a cause of action?

4.     Does KPERS's Counterclaim fail to state a claim for which relief can be granted because in substance it is an attempt to recover attorneys' fees in the absence of contractual or statutory authority to do so?

## IV.    ARGUMENT

To oppose Plaintiff's Motion to Dismiss (Doc. 6) and Memorandum in Support (Doc. 7), KPERS filed its Response to Plaintiff's Motion to Dismiss Defendant's Counterclaims (hereinafter "Response"). (Doc. 11). However, its arguments are unpersuasive, and this Court should dismiss KPERS's Counterclaim for failure to state a claim for which relief can be granted.

a.   **KPERS has not shown its counterclaim to be mandatory, and therefore its failure to plead jurisdiction subjects it to dismissal**

As previously stated, KPERS has failed to plead the basis for this Court to exercise subject-matter jurisdiction over its Counterclaim. Under the Federal Rules of Civil Procedure, "any claim for relief, including a counterclaim, must contain a short and plain statement of the grounds for jurisdiction," unless a court "has jurisdiction and the claim needs no new jurisdictional support." *United States ex rel. W. Extralite Co. v. Mohan Constr., Inc.*, No. 11-cv-2491, 2012 U.S. Dist. LEXIS 34728, *15 (Mar. 15, 2012). Although KPERS fails to cite any local authority supporting the proposition, the District of Kansas has recognized that "a compulsory counterclaim . . . derives its jurisdiction from the same source as the original claim" and therefore when "counterclaims are compulsory, the Court already has subject matter jurisdiction over the counterclaims" and it "need not dismiss them for failure to include a jurisdictional statement." *Id.* at *15-16.

The issue, then, is whether KPERS's counterclaim is permissive or compulsory. A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). KPERS asserts that "Plaintiff's and KPERS's claims arise out of the same transaction and occurrence" which it describes as "Plaintiff's employment and their June 2017 Agreement." (Response, Doc. 11 at 3). However, the claims do not arise from the same transaction and occurrence. Plaintiff's claims arise out of the discriminatory misconduct of KPERS employees. KPERS's counterclaims arise out of the terms of the purported agreement granting KPERS a release, and Plaintiff's purported breach of that agreement. The alleged breach does not involve any of the transactions or occurrences that are the basis Plaintiff's claim, but the bringing of the claim itself.

In support of its argument, KPERS cites *Jensen Int'l, Inc. v. Kelley*, which held that "defendant's counterclaim was compulsory because it arose out of plaintiff's anticipatory breach of the contract on which plaintiff was suing." (Response, Doc. 11 at 3) (citing 2003 Kan. App. Unpub. LEXIS 585, at *4-5 (Ct. App. Aug. 15, 2003)). As KPERS describes, in that case, both the claim and the counterclaim arose out of the enforcement of the terms of a contract. By contrast, Plaintiff's claims are in no way based on the alleged contract in question.

Because the counterclaim is not mandatory, this Court does not implicitly have jurisdiction, and KPERS was required to include a jurisdictional statement. Its failure to do so is grounds for the dismissal of its counterclaim.

**b.      KPERS's Counterclaim fails to meet the notice pleading standard**

KPERS has failed to state a claim for which relief can be granted, because it has failed to meet the notice pleading standards of the Federal Rules of Civil Procedure. KPERS insists that it has done so, but it cannot show that it pleaded more than mere conclusions. For example, the first element of breach of contract is "the existence of a contract between the parties." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). KPERS asserts that it pleaded this elements when it "alleged that it and Plaintiff entered into a written Agreement on June 16, 2017." (Response, Doc. 11 at 5). This is little more than a restatement of the element with a date attached. It certainly says nothing about a meeting of the minds, which—as Plaintiff explained in her Memorandum in Support (Doc. 7 at 4)—is required to meet that element.

KPERS next avers that "the suggestion that the Counterclaim fails to state a claim because the Agreement is not attached is absurd." (Response, Doc. 11 at 5). This misapprehends Plaintiff's argument. In her Memorandum in Support, Plaintiff did point out that "KPERS does

not even bother to attach the purported agreement to its claim." (Doc. 7 at 4). Plaintiff was not arguing that this meant KPERS failed to state a claim; rather, she was illustrating how cursory KPERS's pleading had been. KPERS was not required to attach the agreement, but it was required to plead actual facts about the agreement's terms, and not merely the conclusory averment that the agreement's provisions waived the claims in question.

Regarding the third element, KPERS arguments on the sufficiency of its pleadings are unpersuasive. The third element of breach of contract is "the [counterclaim] plaintiff's performance or willingness to perform in compliance with the contract." *Stechschulte*, 298 P.3d at 1098. As Plaintiff pointed out, nowhere in the counterclaim does KPERS even aver that it performed under the agreement or that it was willing to do so. (Memo. in Supp., Doc. 7 at 5); (Answer and Counterclaim, Doc. 3 at ¶ 142-145). In response to this argument, KPERS claims that its performance was "inherent under the circumstances," based on the contents of Plaintiff's complaint. (Response, Doc. 11 at 5). However, the Complaint states that the terms of the agreement was for Plaintiff to be employed from June 16, 2017 to October 1, 2018, but that she was constructively discharged on August 23, 2017, prior to date upon which KPERS agreed to employ Plaintiff. (Complaint, Doc. 1 at ¶ 52, 69). Thus, if the basis for KPERS meeting this element is the content of Plaintiff's Complaint, KPERS *did not* meet the element, and its Counterclaim fails to plead fact making it probable that the third element of breach of contract was met.

KPERS also suggests that "the matter should have been raised in the Rule 26(f) Conference to avoid wasteful motion practice." (Response, Doc. 11 at 5 n.2) (citing Initial Order Regarding Planning and Scheduling, Doc. 4 at 8). That provision is a note which states that "to

avoid cases getting bogged down with wasteful motion practice," counsel for one party should notify opposing counsel of "any defects in the pleadings that are plainly obvious <u>and</u> that could be easily cured with an amended pleading" during the planning conference." (Doc. 4 at 8). However, Plaintiff does not believe that this defect can be easily cured, because Plaintiff does not believe that KPERS performed its obligation under the agreement. Therefore, that provision was inapplicable.

    c.    **Kansas law does not support recovery for breach of contract based upon a purported release**

KPERS alleges that its attempt to bring a claim for breach of contract based upon its purported release is supported by Kansas law. However, the single case it cites is wholly unpersuasive in light of the clear principle in Kansas common law that parties pay their own attorneys' fees.

KPERS avers that "Kansas authority expressly allows a breach of contract claim for violation of a release." (Response, Doc. 11 at 6). In support of this assertion, it cites *Winn v. Barton*, an unpublished Kansas Court of Appeals case that rapidly dispatched eighteen (18) issues in short order. 1989 Kan. App. Unpub. LEXIS 240, *7 (Kan. Ct. App. 1989). KPERS also misstates the case's holding. While the breach-of-contract defendant in that case may have characterized the contract as a release, it was not so described by the court. Rather, the opinion specifically states that she "agreed not to assert any claim against him or his estate." *Id.* at *9. When she subsequently did assert such a claim, that constituted a breach of contract. *Id.* By contrast, KPERS only alleged that the contract "contains a General Release, releasing Defendant from all claims, causes of action, costs and attorneys' fees related to Plaintiff's employment from her date of hire." (Answer and Counterclaim, Doc. 3, at ¶ 143). It has never claimed that Plaintiff

specifically promised not to bring an action against it. Even the decision in *Winn*, does not permit a breach of contract claim for any release. Therefore, KPERS has not pled an action for breach of contract.

KPERS asserts, without any citation to authority, that "[t]he 'American Rule' and cases that do not involve whether attorneys' fees are proper damages for breach of a release are not persuasive authority." (Response, Doc. 11 at 7). However, this fails to address Plaintiff's argument that allowing such a claim would have the effect of fee shifting without any of the recognized exceptions to the American Rule.

KPERS also compares its claim for breach of contract for release to an action for malicious prosecution, which it describes as "eerily similar" to its claim. (Response, Doc. 11 at 7 n.3). In fact, the contrast between the two claims illustrates why KPERS' action should not be permitted. Under Kansas law, the elements of breach of contract are

> (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."

*Stechschulte*, 298 P.3d at 1098. In the context of the claim for a breach of contract for release, the elements could be specifically described as (1) the existence of a contract between the parties where defendant validly releases a claim against plaintiff; (2) sufficient consideration to support that contract; (3) the plaintiff's performance or willingness to perform in compliance with that contract; (4) the defendant bringing an action for the released claim (thus breaching the contract); and (5) damages to the plaintiff (in the form of the costs of said litigation).

By contrast, the elements of a claim for malicious prosecution are

(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff. (b) That the defendant in so doing acted without probable cause. (c) That the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based. (d) That the proceeding terminated in favor of the plaintiff. (e) That the plaintiff sustained damages.

*In re Landrith*, 280 Kan. 619, 647, 124 P.3d 467 (2005) (internal quotations omitted).

Comparing these two sets of elements, we can see that there are some similarities between the causes of action. Element (4) of breach of contract and element (a) of malicious prosecution both involve the bringing of an action by a defendant against a plaintiff. Element (5) of breach of contract and element (e) of malicious prosecution are nearly identical, requiring that the plaintiff sustained damages. Similarly, elements (1), (2), and (3) of breach of contract could (barring any affirmative defenses or other procedural obstacles) mean that a valid release exists, which would result in element (d), a termination of the proceeding in favor of the (malicious prosecution or breach of contract) plaintiff. Thus, elements (a), (d), and (e) of the malicious prosecution claim (where the termination is based on a release) encompass all the elements of a breach of contract claim for a release.

However, in a claim for malicious prosecution, this is not enough. Elements (b) and (c) of malicious prosecution require not only that the plaintiff prevail, but that the underlying action was brought without probable cause, and with a malicious intent. To not require these elements would have the effect of permitting the recovery of attorneys' fees whenever a defendant prevailed in an action, an outcome which against the clearly established principal (known as the American Rule) that parties pay their own attorneys absent a specific exception.

Similarly, KPERS argues that bringing a purportedly released claim gives rise to an action for breach of contract, permitting the defendant in the original action to recover damages

for the cost of litigating that claim. The effect would be to create a hidden fee-shifting provision in every release. Such a holding would be wholly inconsistent with Kansas' adoption of the American Rule. This is especially true because one of the exceptions to that rule is "contractual authorization." *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 241 P.3d 15, 24 (Kan. 2010). The parties to a contract for a release could include a fee shifting provision, stating that if a party had to bring an action to enforce that release, it could also recover attorney's fees. In the absence of such language, Kansas law clearly disallows such recovery.

KPERS argument that it can bring an action for breach of contract based upon a purported released is not supported by Kansas law. The single, unreported case to which KPERS cites is entirely unpersuasive when weighed against the deeply established principle that, absent an exception to the American rule (such as a statute or contract) or specific wrongdoing by a plaintiff (as in a claim for malicious prosecution), parties in legal cases pay their own attorneys' fees.

## V.    CONCLUSION

Because KPERS's Counterclaim fails to state a claim for which relief may be granted, it should be pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, Plaintiff and Counterclaim Defendant Julie A. Smith humbly requests this Court enter an Order Dismissing Defendant's Counterclaim, and for any further relief which this Court deems just and proper.

Respectfully submitted,


By: /s/ *Alexander Edelman*
Alexander Edelman,        #KS - 25821
Sarah Liesen,           #KS- 26988
Edelman, Liesen & Myers, L.L.P.
4051 Broadway, Suite 4
Kansas City, MO 64111
816-533-4976
Fax: 816-463-8449
aedelman@elmlawkc.com
sliesen@elmlawkc.com

**ATTORNEYS FOR PLAINTIFF /
COUNTERCLAIM DEFENDANT**


## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2018, a true and correct copy of the

foregoing was filed with the CM/ECF system which sent notification to:


Thomas V. Murray
Tammy M. Somogye
10851 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
Telephone: 913-451-5100
Facsimile: 913-451-0875
Email: tmurray@lathropgage.com
tsomogye@lathropgage.com

and

Amanda Sisney
23645 Grand Boulevard
Kansas City, Missouri 64108-2618
Telephone: 816-292-2000
Facsimile: 816-292-2001
Email: asisney@lathropgage.com

**ATTORNEYS FOR DEFENDANT/COUNTERCLAIM PLAINTIFF**
**KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM**


By:   /s/ *Alexander Edelman*
      ALEXANDER EDELMAN
      ATTORNEY FOR PLAINTIFF