# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JULIE A. SMITH,

    **Plaintiff,**

v.

    Case No. 2:18-CV-02340-HLT

KANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM,

    **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Julie A. Smith brought this discrimination and retaliation action against her former employer, Defendant Kansas Public Employees Retirement System (Defendant or KPERS). Plaintiff claims that she was subject to disparate treatment and retaliation in violation of the Americans with Disabilities Act (ADA), Age Discrimination in Employment Act (ADEA), and the Family Medical Leave Act (FMLA). Defendant moves for summary judgment and principally argues that it is entitled to Eleventh Amendment immunity from suit. Doc. 120. Plaintiff responded to the motion and, after Defendant replied, Plaintiff moved to strike Defendant's reply and alternatively asked to file a sur-reply. Doc. 149. After review, the Court denies the motion to strike or file a sur-reply. The Court finds that Defendant is shielded by Eleventh Amendment immunity, denies the motion for summary judgment, and dismisses Plaintiff's claims without prejudice.

**I.    MOTION TO STRIKE OR TO FILE SUR-REPLY**

    **A.  Motion to Strike**

Plaintiff asks the Court to strike Defendant's reply brief because it does not comply with the District of Kansas's local rules. Plaintiff claims that Defendant's brief (1) exceeded the page limit set by Judge Carlos Murguia, the judge previously assigned to this case; (2) does not contain

a statement of the matter before the Court or of the questions presented, as required by D. Kan. R. 7.6(a); and (3) contains misplaced material facts instead of complying with D. Kan. R. 7.6(a)(2) and 56.1(c). Plaintiff relies on the Court's inherent authority to strike documents that fail to comply with the District of Kansas's local rules, citing *Coffman v. Hutchinson Community College*, 2017 WL 4222981, at *2 (D. Kan. 2017), in support of her position.

Plaintiff is correct; the Court does have the inherent authority to strike briefs that fail to meet the Court's requirements. But the "inadequacies" that Plaintiff cites do not concern the Court here. First, Defendant did not exceed the page limit. Defendant's arguments and authorities are not in one place in the brief, but this is not a requirement. When added up, the pages do not exceed the limit in this case. Second, Defendant has included all the elements in Rule 7.6(a)—even if they are not overtly listed in the brief. Third, the Court is not concerned with the way Defendant addressed the factual submissions in this case. The Court will not strike Defendants' reply brief based on its inherent authority.

### B. Motion to File Sur-reply

Alternatively, Plaintiff asks for leave to file a sur-reply to address Defendant's "new" arguments. Although this District's rules "do not provide for the filing of surreplies," leave to file a Sur-reply may be appropriate "where a movant improperly raises new arguments in a reply." *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (internal quotations omitted). The Tenth Circuit has held that "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (internal quotations omitted).

The Court also denies this request for several reasons. First, although Plaintiff attached a proposed sur-reply, Plaintiff also indicates that she would like to amend the proposed sur-reply.

Doc. 15, at 7, 12, 14. This is improper. Plaintiff should have attached her final proposed sur-reply—not a provisional one that she intends to further amend. Second, Defendant did not improperly raise new arguments in its reply brief. Any new argument was directly in response to an argument made by Plaintiff. Third, no sur-reply is necessary because the Court does not rely on any of the "new" arguments in deciding Defendant's motion for summary judgment. As explained below, the Court addresses only the question of whether Defendant has Eleventh Amendment immunity. Plaintiff's proposed sur-reply does not relate to immunity. *See* Doc. 150, at 8. For these reasons, the Court determines that no sur-reply is necessary or appropriate. The Court next addresses the underlying summary judgment motion filed by Defendant.

## II. MOTION FOR SUMMARY JUDGMENT

The Court turns to two arguments that collectively (1) require no recitation of the uncontroverted facts and (2) are dispositive of the case. The first is whether Defendant has waived Eleventh Amendment immunity. The second is whether Eleventh Amendment immunity shields Defendant from suit. The answer to the first question is no. The answer to the second is yes.

### A. Waiver

Relatively late in this case, Defendant asserted that it is an "arm of the state" and is therefore entitled to sovereign immunity. Plaintiff argues that Defendant waived the right to make this argument, based on K.S.A. § 74-4904(1) and Defendant's litigation conduct.

Plaintiff's first argument has no merit. The Kansas statute both creates Defendant and provides that Defendant "may sue and be sued in its official name." K.S.A. § 74-4904(1). But this statute is not a clear waiver of immunity in federal court. Indeed, Defendant may sue and be sued in state court. This type of state statute, however, does not extend a waiver of immunity to federal court. *See Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 149–

3

50 (1981); *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) (applying "a stringent test" to determine waiver, which must be "unequivocal"—meaning "'only where stated "by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction"'") (citations omitted).

Plaintiff's second argument likewise fails. Plaintiff claims that *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2001), is analogous and shows that Defendant waived sovereign immunity by its actions. In *Lapides*, a state entity joined a removal notice to remove the case from state court to federal court. 535 U.S. at 616. The state entity then moved to dismiss based on Eleventh Amendment Immunity. *Id.* The Supreme Court held that the entity waived its immunity to state law claims in federal court by joining in the removal. *Id.* at 624. According to Plaintiff, Defendant likewise waived its immunity by filing a counterclaim that relied on supplemental or ancillary jurisdiction. Plaintiff claims that by filing its counterclaim, Defendant admitted that the Court had original jurisdiction over Plaintiff's claims—"thereby contending that the 'Judicial power of the United States' applied to Plaintiff's claims." Doc. 138, at 171.

Filing a counterclaim in a case originally filed in federal court is not the same as removing a case from state court to federal court. Defendant's counterclaim was compulsory. Defendant was required to file the claim in this existing federal case or risk waiving it. Although Defendant could have filed a motion to dismiss at that time, this was merely one option for Defendant. Sovereign immunity may be raised at any time, and Defendant was not required to raise it immediately upon Plaintiff's filing of this case in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984) (providing that Eleventh Amendment immunity may be raised at any time). Unlike in *Lapides*, Defendant did not voluntarily invoke this Court's jurisdiction. Defendant

4

responded to a case that Plaintiff originally filed in federal court. This litigation conduct is insufficient to act as a waiver of Eleventh Amendment immunity. *Cf. Mescalero Apache Tribe v. N.M.*, 131 F.3d 1379, 1385 n.4 (10th Cir. 1997) (holding that filing a counterclaim while also asserting Eleventh Amendment immunity did not waive sovereign immunity).

The Court acknowledges that there are situations in which a state or arm of the state may waive Eleventh Amendment immunity. But those situations are rare. The Court is not inclined to find waiver absent a compelling reason. *See McLaughlin v. Bd. of Trs. of State Coll. of Colo.*, 215 F.3d 1168, 1170 (10th Cir. 2000) ("[T]he test of determining a waiver of immunity is strict and . . . there must be an unequivocal intent to waive the immunity.") (internal quotation marks and citation omitted). Courts have found waiver when a state voluntarily invokes jurisdiction (as in removing a case from state court to federal court) and when the state clearly declares an intent to submit itself to federal court jurisdiction. *See Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). Neither event has occurred here. At most, Defendant overlooked its potential for immunity until late in the case—not recognizing availability of the defense at first because Defendant had not faced ADA, ADEA, or FMLA claims before. *Smith v. Kan. Pub. Emps. Ret. Sys.*, 2019 WL 5102180, at *2 (D. Kan. 2019) (outlining Defendant's reasons for belatedly seeking to amend its answer to include an immunity defense). Under these circumstances, the Court cannot in good faith find that Defendant voluntarily waived any immunity from suit in federal court to which it may be entitled.[1]

---

[1] It is worth nothing that Plaintiff identifies no prejudice from Defendant's failure to raise immunity earlier in the case. In the absence of any prejudice to Plaintiff, the Court is even more reluctant to find that Defendant waived a constitutional immunity. And even if the Court were inclined to ignore the potential of sovereign immunity, Plaintiff faces a significant uphill battle in pursuing her claims on the merits. Plaintiff signed an employment agreement containing a release of many of the very claims she brings in this case. The court recognizes that Plaintiff believes the release to be invalid. But the Court harbors serious concerns about Plaintiff bringing claims so overtly identified in the release.

### B. Eleventh Amendment Immunity

Finding that Defendant has not waived any Eleventh Amendment immunity to which it may be entitled, the Court next turns to the question of entitlement itself. The Eleventh Amendment protects nonconsenting states from federal lawsuits filed by private individuals. *Bd. of Trs. of the Univ. of Ala.*, 531 U.S. 356, 363 (2001). This immunity applies both to states, as well as "entities created by state governments that operate as alter egos or instrumentalities of the states." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996) (citation omitted).

Defendant argues that the answer to the immunity question is simple: K.S.A. § 74-4903 provides that Defendant is "an instrumentality of the State of Kansas." Because the Kansas legislature has said in no uncertain terms that Defendant is an arm of the state, no further inquiry is necessary, and Defendant is entitled to the same immunity that the State of Kansas enjoys.

The Court tends to agree with Defendant. It seems that if the Kansas legislature determined that Defendant is a state entity, then that should end the inquiry. Moreover, other District of Kansas cases have accepted without extensive analysis that Defendant is an arm of the state. *See, e.g.*, *Am. Int'l Specialty Lines Ins. Co. v. Reimer & Koger Assoc., Inc.*, 874 F. Supp. 324, 326 (D. Kan. 1995) ("Under these circumstances the court finds that KPERS is an arm of the state for purposes of the Eleventh Amendment."); *Reiger v. Kan. Pub. Emps. Ret. Sys.*, 755 F. Supp. 360, 361 (D. Kan. 1990) (dismissing KPERS based on Eleventh Amendment immunity); *see also Kan. Pub. Emps. Ret. Sys. v. Boatmen's First Nat'l Bank of Kan. City*, 982 F. Supp. 806, 808–09 (D. Kan. 1997) (conducting more extensive analysis in determining that remand of the case was proper because KPERS was an alter ego of the State of Kansas). And multiple other jurisdictions with similar state public employee retirement systems have found their respective retirement systems to be arms of the states. *See, e.g.*, *Pub. Sch. Ret. Sys. of Mo. v. State Street Bank & Trust Co.*, 640 F.3d 821, 833

(8th Cir. 2011) (determining public school employee retirement fund was an arm of the estate); *Burrell v. Teacher's Ret. Sys. of Ala.*, 353 F. App'x 182, 183 (11th Cir. 2009) (finding Teacher's Retirement System of Alabama to be an arm of the state); *Ernst v. Rising*, 427 F.3d 351, 359–61 (6th Cir. 2005) (citing example cases from other jurisdictions and finding the government retirement system for state judges and other officials was an arm of the state); *McGinty v. New York*, 251 F.3d 84, 96 (2d Cir. 2001) (New York Retirement System); *Fitzpatrick v. Bitzer*, 519 F.2d 559, 561 (2d Cir. 1975) (Connecticut State Employees' Retirement System). *But see, e.g.*, *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 601 (4th Cir. 2006) (State of Wisconsin Investment Board); *Blake v. Kline*, 612 F.2d 718, 723–24 (3d Cir. 1979) (Public School Employees' Retirement Board of Pennsylvania).

Nevertheless, Plaintiff argues that the Court must consider the guidance of *Sturdevant v. Paulson*, 218 F.3d 1160, 1167 (10th Cir. 2000), including two overriding inquiries and four factors, in determining whether Defendant is an arm of the state. The Court assumes without deciding that full analysis of the factors is appropriate.[2]

The two overriding inquiries are (1) How much autonomy is given to the agency?; and (2) What is the potential for state treasury liability? The first inquiry—the agency-autonomy inquiry—involves analysis of four factors: "(1) [t]he characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf." *Sturdevant*, 218 F.3d at 1167. The Court first examines these factors before turning to the treasury liability analysis.

---

[2] *Sturdevant* considered a situation in which the entity was <u>not</u> defined by statute as an instrumentality of the state. Defendant therefore urges the Court to forgo full analysis of the *Sturdevant* factors. Nevertheless, the Court need not resolve whether the *Sturdevant* analysis is required here because the result is the same as simply taking K.S.A. § 74-4901 at face value. Most cases the Court has reviewed applied full analysis of the factors.

Factor One—the characterization of Defendant under state law—weighs in favor of Defendant. As noted previously, by Kansas statute, Defendant is "an instrumentality of the state of Kansas." K.S.A. § 74-4903. This statement unambiguously conveys the legislature's intent.

Factor Two—the guidance and control exercised by the state over Defendant—also weighs in favor of Defendant. Defendant is governed by a Board of nine trustees. Seven of the nine either are or are appointed by political leaders. K.S.A. § 74-4905(a)(1), (3). The Board's meetings must be open to the public. K.S.A. § 74-4909(4). Defendant's records are public records under the Kansas Open Records Act. K.S.A. § 74-4907(2). Defendant reports its financial condition annually to members of Kansas government and must maintain "transparency in state government." K.S.A. §§ 74-4907(2), 74-4909(15). These facts indicate that the State of Kansas exercises substantial guidance and control over Defendant.

Factor Three—the degree of state funding Defendant receives—is more neutral. This is the factor that Plaintiff believes is most important, focusing on the direction from *Sturdevant* that "[t]he key question is whether funds to satisfy a money judgment would come directly from the state, or indirectly through commingled state and local funds or state indemnification provisions." 281 F.3d at 1165 (citation omitted). The Tenth Circuit has stated that the inquiry must "focus on the legal liability for a judgment, rather than the practical or indirect effect such a judgment might have." *Id.* at 1164 (citation omitted).

Plaintiff cites deposition testimony from Defendant's Executive Director Alan Conroy, who testified that a judgment against Defendant would be payable from a trust fund that is held for the benefit of Defendant's members. Although the trust fund is held in the Kansas state treasury, the treasury is the fund's custodian—not its owner. And the sources of the fund are commingled. Sources include contributions of employees and employers (both state agencies and

municipalities), as well as profits from investments. *See* K.S.A. § 74-4921(1). Significantly, the State of Kansas was the first employer to participate in Defendant's retirement fund and contributes state funds. K.S.A. § 74-4910(2). And even if some employers who contribute are local government, the State of Kansas still must pay benefits once an employee of that employer becomes a member of KPERS. K.S.A. §§ 74-4915.

The Court determines that this factor weighs evenly for both parties. Defendant undeniably receives some state funding, but it also receives funding from individual sources. And the funds are commingled, but they are also held in the state treasury. As in *Sturdevant* itself, this factor weighs on both sides of the scale. 218 F.3d at 1170.

Finally, Factor Four—Defendant's ability to issue bonds and levy taxes—weighs in favor of Defendant. Defendant does not have the ability to issue bonds or levy taxes.

Based on these four factors, the Court determines that Defendant does not have significant autonomy from the State of Kansas. This suggests that Defendant is, indeed, an arm of the state.

Plaintiff argues that the other inquiry—about state treasury liability—is much more critical and indicates that Defendant is not an arm of the state. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994) (recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations"). As noted above, Plaintiff believes that the State of Kansas would not be liable for a judgment against Defendant.

The Court disagrees. K.S.A. § 74-4921 provides that Defendant's retirement fund is part of the state treasury. Any judgment against Defendant would therefore be payable from the treasury. Plaintiff's argument that the treasury is only holding Defendant's funds in trust for individuals—and the funds are therefore non-State funds—is unavailing. Even if the source of the funds is state employee and employer contributors, the legal judgment would still be against the

State of Kansas. The state's legal liability for judgment is what is critical; not the state's financial liability for judgment. The logic is like that of indemnification. When another party is contractually obligated to indemnify a state entity, the state entity does not lose its sovereign immunity because it will not ultimately have to pay a judgment. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 430–31 (1997). Likewise, here, even if the source of the treasury funds is not entirely the state, the State of Kansas will ultimately be legally liable if Defendant lost this case. That is what is important.

Based on a either a shortened or a full arm-of-the-state analysis, Defendant is an arm of the state and may invoke Eleventh Amendment immunity. Because Defendant has not otherwise waived its immunity, the Court lacks jurisdiction over Plaintiff's claims against Defendant. The proper remedy, however, is not to grant Defendant's motion for summary judgment. The proper remedy is to dismiss Plaintiff's claims without prejudice. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice.") (citations omitted); *Shikles v Sprint/United Mgmt. Co.*, 426 F.3d 1317–18 (10th Cir. 2005) (holding that when the court lacked jurisdiction, the district court should have ordered dismissal rather than entering summary judgment) (*abrogated on other grounds by Lincoln v. BNSF Ry.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

### III. CONCLUSION

For the above reasons, the Court finds that Plaintiff's motion to strike or file sur-reply should be denied. The Court also finds that Eleventh Amendment immunity applies and shields Defendant from the asserted claims.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Strike Reply in Support of Summary Judgment or, in the Alternative, to File a Sur-reply Memorandum in Opposition Thereto (Doc. 149) is DENIED.

THE COURT FURTHER ORDERS that Defendant Kansas Public Employees Retirement System's Motion for Summary Judgment (Doc. 120) is DENIED, but Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. The case is closed.

IT IS SO ORDERED.

Dated: March 26, 2020 /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE